| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY, COLORADO<br>Court Address: 1437 Bannock Street<br>Denver, CO 80202 | DATE FILED: April 17, 2020 4:03 PM<br>FILING ID: D7ADE92162A17<br>CASE NUMBER: 2020CV31403 |
| Plaintiff:  Brian Millikan<br><br>v.<br><br>Defendant: Allstate Indemnity Company | ▲COURT USE ONLY▲ |
| Counsel For Plaintiff<br>Jon M. Topolewski, #52318<br>Joseph Sirchio #44675<br>Franklin D. Azar & Associates, P.C.<br>14426 East Evans Avenue<br>Aurora, CO 80014<br>Phone Number: (303) 757-3300<br>Fax Number:    (303) 759-5203<br>E-Mail: topolewskij@fdazar.com<br>          sirchioj@fdazar.com | Case No.<br><br>Division: |
| **COMPLAINT** | |

Plaintiff, by and through his attorneys, Franklin D. Azar and Associates, P.C., for his Complaint against the Defendant, states and alleges as follows:

### I.   PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Brian Millikan (hereinafter "Mr. Millikan") is an individual and resident of the State of Colorado.

2. Upon information and belief Defendant Allstate Indemnity Company, hereinafter "Allstate" is a corporation doing business in Colorado.

3. The Court has jurisdiction over this matter pursuant to CRS 13-1-124.

4. Venue is proper in the County of Denver pursuant to C.R.C.P. 98(c)

### II.   GENERAL ALLEGATIONS

5. A vehicle collision occurred on December 19, 2019 at approximately 6:01 A.M.

6. The collision occurred on Brighton Road at Monaco Street in Adams County, Colorado.

7. Mr. Millikan was the operator of a 2017 Toyota Tundra at the time of the collision.

8. The collision also involved a vehicle being operated by Carolina Mendez-Gamez.

9. Ms. Carolina Mendez-Gamez (hereinafter "Ms. Mendez-Gamez") was the operator of a 2000 Subaru Outback registered to Julio Hernandez.

10. Mr. Millikan was travelling westbound on West Brighton Road.

11. Ms. Mendez-Gamez, while travelling eastbound on West Brighton Road, attempted to make a left turn onto Monaco in front of Mr. Millikan and caused a collision between her vehicle and Mr. Millikan's vehicle.

12. A Colorado State Patrol officer investigated the wreck.

13. The reporting officer noted the damage to Mr. Millikan's vehicle was severe.

14. Allstate agrees the damage to Mr. Millikan's vehicle was severe.

15. There was nothing Mr. Millikan could do to avoid the wreck.

16. Mr. Millikan was not contributorily negligent in causing the wreck.

17. Weather did not contribute to causing the wreck.

18. No third party contributed to causing the wreck.

19. Colorado State Police found Ms. Mendez-Gamez solely responsible for causing the wreck.

20. Colorado State Police cited Ms. Mendez-Gamez for failing to yield the right of way when turning left in front of approaching traffic in violation of CRS 42-4-702.

21. Ms. Mendez-Gamez violated CRS 42-4-702 in causing this wreck.

22. Ms. Mendez-Gamez was solely responsible for causing this wreck.

23. Allstate investigated the wreck.

24. Allstate placed 100% of the fault for the wreck on Ms. Mendez-Gamez.

25. Colorado State Police reported that Mr. Millikan had injuries at the scene of the crash.

26. Mr. Millikan had evident injuries at the scene of the crash.

27. Mr. Millikan incurred injuries, losses, and damages as a result of the crash.

28. Mr. Millikan's injuries, losses, and damages were caused by Mendez-Gamez' negligence.

29. Ms. Mendez-Gamez was underinsured at the time through a policy of insurance with Dairyland / Sentry Insurance providing $25,000 in liability coverage.

30. At the time of the wreck, Mr. Millikan had underinsured motorist coverage with Allstate providing an additional $100,000 in bodily injury coverage.

31. Mr. Millikan timely reported the claim to Allstate.

32. On January 21, 2020, Mr. Millikan's attorneys faxed a letter of representation to Allstate.

33. In that letter from January 21, 2020, Mr. Millikan's attorneys requested a copy of Mr. Millikan's policy with Allstate.

34. In that letter from January 21, 2020, Mr. Millikan's attorneys also advised Allstate that "In the event you require a recorded statement or other information from my client, please direct all inquiries in that regard to me."

35. On January 27, 2020, Allstate sent a copy of Mr. Millikan's insurance policy to Mr. Millikan's attorneys.

36. Mr. Milliken paid Allstate $1,347.04 for 6 months of insurance coverage for the period July 15, 2019 through January 20, 2020.

37. Mendez-Gamez' insurer, Dairyland/Sentry Insurance, tendered their policy limits of $25,000 to Mr. Millikan in exchange for a full and final release and settlement of his claims against her for bodily injuries sustained during the collision.

38. On March 23, 2020, after receiving a request from Mr. Millikan's counsel, Allstate Adjuster Collin Draine provided consent to settle Mr. Millikan's bodily injury claim with Dairyland/Sentry for the $25,000 limits and agreed to waive Allstate's subrogation rights.

39. On February 25, 2020, Mr. Millikan's attorney mailed Allstate documentation of the expenses and treatment Mr. Millikan received and incurred as a result of injuries he suffered from the collision and requested that Allstate tender benefits owed within 30 days.

40. Within that February 25, 2020 submission was documentation of $13,538.60 in medical expenses Mr. Millikan received for treatment of his injuries.

41. Within that February 25, 2020 submission was documentation of a surgical estimate totaling $53,144.00.

42. Within that February 25, 2020 submission was a medical note from Dr. Rudy Kovachevich from Hand Surgery Associates dated February 4, 2020.

43. Dr. Rudy Kovachevich is a board-certified orthopedic surgeon.

44. Dr. Rudy Kovachevich is a competent orthopedic surgeon.

45. Dr. Rudy Kovachevich noted in his February 4, 2020 medical note that surgery would be in Mr. Millikan's best interest.

46. Dr. Rudy Kovachevich noted in his February 4, 2020 medical note that Mr. Millikan agreed that surgery would be in his best interest and wished to proceed.

47. On March 26, 2020, Allstate Adjuster Collin Draine sent a letter to Mr. Millikan's counsel advising that he recognized that surgery was recommended.

48. On March 26, 2020, Allstate Adjuster Collin Draine sent a letter to Mr. Millikan's counsel advising that in the current climate surgery may not be considered an essential procedure.

49. On March 26, 2020, Allstate Adjuster Collin Draine sent a letter to Mr. Millikan's counsel advising that if Mr. Millikan does follow through with surgery, he will be happy to review the bills and records as a part of his evaluation.

50. On March 26, 2020, Allstate Adjuster Collin Draine sent a letter to Mr. Millikan's counsel advising that he evaluated the claim considering conservative care for the issue.

51. On March 26, 2020, Allstate Adjuster Collin Draine sent a letter to Mr. Millikan's counsel advancing benefits of $1,184.97.

52. As of the filing of this Complaint, Allstate never told Mr. Millikan or his counsel that they disputed that the proposed surgery was medically reasonable and necessary.

53. As of the filing of this Complaint, Allstate never advised Mr. Millikan or his counsel that they disputed that the proposed surgery was causally related to the subject wreck on December 19, 2019.

54. As of the filing of this Complaint, Allstate never told Mr. Millikan or his counsel that it disputed the estimated cost of the surgical procedure.

55. Prior to March 26, 2020, Allstate never had Mr. Millikan's claim evaluated by a medical professional.

56. At the time this evaluation was conveyed, $1,184.97 was not the top evaluation placed on the claim.

57. Allstate procedure is for Allstate adjuster Collin Draine to have an Evaluation Consultant review his evaluation of Mr. Millikan's claim.

58. Upon information and belief Allstate employee Roberto Loya reviewed Collin Draine's evaluation of Mr. Millikan's claim.

59. Roberto Loya authorized Collin Draine to settle Mr. Millikan's claim for more than Collin Draine offered Mr. Millikan.

60. It was Allstate's policy at the time of this evaluation to advance benefits equal to the full amount of its evaluation at the time the offer is made.

61. The policy Mr. Millikan purchased from Allstate was in effect on the date of the incident.

62. The policy provides that Allstate will pay damages that an insurance person is legally entitled to recover from the owner or operator of an underinsured auto because of bodily injuries sustained by an insured person.

63. As this wreck occurred in Colorado, Colorado laws concerning the damages that a person suffers due to the tortious acts of another control what damages Mr. Millikan is entitled to recover.

64. Under Colorado law, an injured person is legally entitled to recover future medical expenses from a tortfeasor that he or she will more likely than not have in the future.

65. Future medical care caused by an underinsured driver is compensable under Allstate's UIM coverage for Mr. Millikan.

66. Allstate agrees that future medical care caused by an underinsured driver is compensable under its UIM coverage when it is more likely than not that the future medical care was caused by the underinsured driver.

67. Allstate has never been told that Mr. Millikan will not have the recommended surgical procedure.

68. Allstate has no documents stating that Mr. Millikan will not have the recommended surgical procedure.

69. Mr. Millikan's attorneys told Allstate adjuster Collin Draine that Mr. Millikan will be having the recommended surgical procedure.

70. On April 7, 2020, Allstate received a medical note from a second orthopedic surgeon, Dr. Andrew Parker with Advanced Orthopedics dated April 6, 2020 also recommending that Mr. Millikan have shoulder surgery.

71. The April 6, 2020 medical note from Dr. Parker noted that Mr. Millikan would like to proceed with the operative treatment recommended and this would be scheduled when possible.

72. Allstate has refused to compensate Mr. Millikan for a future medical procedure that it agrees was caused by an underinsured driver.

73. Allstate adjuster Collin Draine is following Allstate guidelines when he refuses to consider future medical care in his evaluation of first party claims.

74. Allstate instructs its adjusters, like Collin Draine, to not consider future medical care in their evaluations.

75. Allstate encourages its adjusters, like Collin Draine, to not consider future medical care in their evaluations.

76. Allstate has no reasonable basis to not compensate Mr. Millikan for his future medical care that was caused by an underinsured driver.

77. Allstate has written policies on how adjusters, like Collin Draine, should evaluate future medical care.

78. Allstate adjuster Collin Draine routinely refuses to consider future medical care in his evaluation of first party claims.

79. Allstate is aware that Collin Draine routinely refuses to consider future medical care in his evaluation of first party claims.

80. Mr. Millikan's counsel requested that Allstate pay the benefits owed based upon the information provided on or before April 9, 2020.

81. As of the filing of this complaint, Allstate has only paid benefits totaling $1,184.97.

82. Despite requests from Mr. Millikan's counsel, Allstate has failed to provide any documents, reports or notes concerning its evaluation of Mr. Millikan's claim and the basis for its evaluation of the claim.

83. Upon information and belief Allstate re-prices the medical bills submitted by claimants.

84. Upon information and belief Allstate re-priced Mr. Millikan's medical bills.

85. Allstate has not included the cost of Mr. Millikan's shoulder surgery in its evaluation of his claim.

86. Future pain caused by an underinsured driver is compensable under Allstate's UIM coverage for Mr. Millikan.

87. Physical impairment caused by an underinsured driver is compensable under Allstate's UIM coverage for Mr. Millikan.

88. Allstate has not included physical impairment in its evaluation of Mr. Millikan's claim.

89. Allstate has not included scarring in its evaluation of Mr. Millikan's claim.

90. Allstate has not tendered Mr. Millikan UIM benefits for his future shoulder surgery.

91. Allstate has not tendered Mr. Millikan UIM benefits for his future pain.

92. Allstate adjusters are trained to evaluate pain and suffering.

93. Allstate adjusters are trained to place a dollar value on pain and suffering.

94. Allstate has not tendered Mr. Millikan UIM benefits for his physical impairment.

95. As Mr. Millikan's insurer at the time of this wreck, Allstate owes Mr. Millikan a duty of good faith and fair dealing.

96. Good faith and fair dealing requires that claims decisions be based on applicable law.

97. Good faith and fair dealing requires that claims decisions not be based upon speculation or conjecture.

98. Good faith and fair dealing requires that benefits not be unjustifiably delayed or denied.

99. Mr. Millikan has complied with all policy terms.

100. Mr. Millikan has provided Allstate with all requested information available to him.

101. Allstate has not requested a recorded statement from Mr. Millikan as of this Complaint's filing date.

102. Allstate has not requested Mr. Millikan to be examined by a doctor of its' choosing as of this Complaint's filing date.

103. Allstate knows that collateral sources of recovery are not allowed into evidence during personal injury trials.

104. Mr. Millikan has cooperated with Allstate's investigation of his claim.

105. Mr. Millikan has cooperated with Allstate's evaluation of his claim.

106. Allstate has never advised Mr. Millikan or his counsel that he was failing to cooperate with its investigation and evaluation of his claim.

107. Allstate has never told Mr. Millikan that it required medical authorizations to complete its investigation of his claim.

108. Allstate adjuster has advised a supervisor that Mr. Millikan was failing to cooperate.

109. Allstate does not have a contractual relationship with any of Mr. Millikan's providers.

110. Allstate has not provided Mr. Millikan with the Colossus Report prior to litigation.

111. Allstate agrees that Mr. Millikan was injured in the collision.

112. Allstate agrees that Mr. Millikan experienced pain as a result of the collision.

113. Allstate agrees that Mr. Millikan needs a shoulder surgery as a result of the collision.

114. Allstate agrees that Mr. Millikan's recommended shoulder surgery is considered to be a voluntary or elective surgery.

115. Allstate agrees that on March 19, 2020 Governor Polis issued an executive order directing all voluntary or elective surgeries or procedures be suspended until April 14, 2020.

116. Allstate agrees that on April 6, 2020 Governor Polis extended the suspension on voluntary or elective surgeries to April 26, 2020.

117. Allstate is using the economic anxiety precipitated by the Covid-19 pandemic as leverage to force Mr. Millikan to accept less than fair value to settle his claim.

**FIRST CLAIM FOR RELIEF**
**(Breach Of Contract – Claim For Uninsured Motorist Benefits**
**Against Defendant Allstate)**

118. Mr. Millikan incorporates all prior allegations as though fully set forth herein.

119. Sometime prior to the collision, Mr. Millikan, entered into a contract with Allstate for the purpose of obtaining automobile insurance, which policy includes coverage for claims involving uninsured and underinsured motorists.  At all times pertinent to the within action, all the premiums as required under the contract for insurance were paid to Allstate.

120. Mr. Millikan has advised Allstate of a claim for underinsured motorist benefits for this incident under its policy of insurance, and otherwise fully cooperated with Allstate in connection with the claim.

121. Mr. Millikan is an intended beneficiary of Allstate's Insurance policy/contract and is therefore entitled to enforce its terms.

122. Mr. Millikan is entitled to be compensated by Allstate for all damages he has incurred, including pain, suffering, loss of enjoyment of life, loss of earnings and earning capacity, permanency and/or impairment, and disability, and past and future medical expenses under the uninsured motorist coverage of the policy.

123. Allstate's offer fails to fully and adequately compensate Mr. Millikan for his damages and, as a result, has breached the terms of the contract to which Mr. Millikan in an intended beneficiary.

## SECOND CLAIM FOR RELIEF
### (FIRST PARY STATUTORY CLAIM UNDER C.R.S. § 10-3-1116)

124. Mr. Millikan incorporates all prior allegations as though fully set forth herein.

125. Allstate has denied and delayed payment of under-insured motorist benefits to Mr. Millikan without a reasonable basis for its action.

126. Allstate's unreasonable position and conduct has caused Mr. Millikan damage by the loss of the compensation that is due to him and which Allstate should have previously paid to him.

127. In accordance with C.R.S. §10-3-1116, Mr. Millikan is entitled to recover from Allstate two times the covered uninsured motorist benefits plus reasonable attorney's fees and court costs.

## THIRD CLAIM FOR RELIEF
### (Bad Faith Against Defendant Allstate)

128. Mr. Millikan incorporates all prior allegations as though fully set forth herein.

129. Allstate owed Mr. Millikan a duty to act in good faith in reviewing, adjusting and settling his claims.

130. Allstate breached its duties to its insured, and acted in bad faith, through its conduct as described above and by engaging in the following, among other acts:

      (a)      Compelling Mr. Millikan to institute litigation to recover amounts due to him under the underinsured motorist bodily injury liability benefits afforded Mr. Millikan under the insurance policy by undervaluing the extent of his damages;

      (b)      Favoring the interests of Allstate, an insurer, over those of Mr. Millikan, an insured, to whom Allstate owes fiduciary and statutory duties;

      (c)      Failing or delaying payment of reasonable compensation for the injuries, damages, and losses Mr. Millikan suffered at the hands of an underinsured motorist;

      (d)      Incompetently evaluating Mr. Millikan's claim.

131. Allstate's actions are unreasonable.

132. Allstate knew its conduct was unreasonable or disregarded the fact that its conduct was unreasonable.

133. As a direct result of Allstate's breaches of its duties to its insured, Mr. Millikan has been damaged including, but not necessarily limited to:

      (a)      Being forced to incur additional costs in litigation;
      (b)      Enduring the emotional trauma of being unnecessarily involved in a lawsuit with Allstate; and
      (c)      Being deprived of the use of funds.

WHEREFORE, Plaintiff prays for judgment against Allstate for all general damages, economic damages, all statutory and necessary costs including, but not limited to, expert witness fees and the expenses incurred in investigation and discovery required to present Plaintiff's claims, attorney fees and interest from the time of the occurrence, post-judgment interest at the requisite rate, and for such other and further relief as this Court shall deem proper, just, and appropriate under the circumstances.

Respectfully, submitted on this April 17, 2020.

FRANKLIN D. AZAR & ASSOCIATES, P.C.

By: */s/ Jon M Topolewski*
Jon M. Topolewski, #52318
Joseph Sirchio #44675
ATTORNEY FOR PLAINTIFF

**Plaintiff's Address:**
**6333 Zang Court Unit B**
**Arvada, CO 80004**

*In accordance with C.R.C.P. 121, §1-26(9), a printed copy of this document with original signatures is being maintained by the filing party and will be made available for inspection by other parties or the Court upon request.*